## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| JULIA E. SHUMATE<br>694 Garfield Avenue, Apartment D<br>Newark, Ohio 43055<br><br>On behalf of herself and all others<br>similarly-situated,<br><br>      Plaintiff,<br>v.<br><br>GENESCO, INC.<br>1415 Murfreesboro Pike<br>Nashville, Tennessee 37217<br><br>c/o Corporation Service Company<br>50 West Broad Street, Suite 1330<br>Columbus, Ohio 43215<br><br>and<br><br>HAT WORLD, INC., d/b/a LIDS<br>SPORTS GROUP<br>10555 Lids Way<br>Zionsville, Indiana 46077<br><br>c/o Corporation Service Company<br>50 West Broad Street, Suite 1330<br>Columbus, Ohio 43215<br><br>and<br><br>JOHN DOE DEFENDANTS NOS. 1-5<br>Names and Addresses Unknown<br><br>and<br><br>ABC ENTITY DEFENDANTS NOS.<br>1-5<br>Names and Addresses Unknown<br><br>      Defendants. | Case No. _____<br><br>Judge _____<br><br><br><br>**CLASS AND COLLECTIVE ACTION<br>COMPLAINT**<br><br><br>**(JURY DEMAND ENDORSED HEREON)** |

Plaintiff Julia Shumate brings this class and collective action against Defendants Genesco, Inc., and Hat World, Inc., d/b/a LIDS Sports Group, and states as follows:

## NATURE OF THE ACTION

1. This action challenges the practices of Defendants Genesco, Inc., and Hat World, Inc., d/b/a LIDS Sports Group by which they willfully violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, Ohio Constitution Article II, Section 34a, the Ohio Minimum Fair Wage Standards Act ("MFWSA"), R.C. § 4111, *et seq.*, and R.C. § 4113.15.

2. Plaintiff brings this case as an FLSA collective action, on behalf of herself and all similarly-situated individuals, and seeks to represent the following subclasses pursuant to 29 U.S.C. § 216(b) (the "FLSA Subclasses"):

> A. All store managers who worked for Defendants from February 22, 2014 to present, in a store which primarily sold headwear throughout the United States, and who were misclassified as exempt and not paid overtime (the "FLSA Overtime Subclass"); and
>
> B. All store managers who worked for Defendants from February 22, 2014 who were paid less than minimum wage and not paid overtime as a result of deductions which took them below minimum wage during any work week (the "FLSA Minimum Wage Subclass").

3. Plaintiff also assists a class action under Rule 23, on behalf of herself and all similarly-situated individuals based on claims under Ohio Constitution, Article II, Section 34a, R.C. § 4111, *et seq.*, and R.C. § 4113.15. Plaintiff seeks to represent the following subclasses pursuant to Rule 23 (the "Ohio Rule 23 Subclasses"):

> A. All store managers who worked for Defendants from February 22, 2015 to present, which primarily sold headwear throughout Ohio, and who were misclassified as exempt and not paid overtime (the "Ohio Overtime Subclass"); and
>
> B. All store managers who worked for Defendants from February 22, 2014 to present and who were paid less than minimum wage and overtime as a result of

2

deductions which took them below minimum wage during any work week (the "Ohio Minimum Wage Subclass").

## JURISDICTION AND VENUE

4. This Court has jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

5. This Court has supplemental jurisdiction over Plaintiff's Ohio law and Ohio Constitutional claims pursuant to 28 U.S.C. § 1367.

6. Defendants regularly transact business in this District and they are subject pursuant to its personal jurisdiction of this Court.

7. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

8. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

9. Plaintiff Julia Shumate is an individual residing at 694 Garfield Avenue Apartment D, Newark, Ohio 43055.

10. Plaintiff was employed by Defendants from November 2010 until June 2015, including from November 2010 to December 2014 as an "assistant manager" and from December 2014 to June 2015 as a "store manager."

11. Plaintiff has given written consent to bring this action to collect unpaid wages. (Ex. A).

12. Plaintiff, all similarly-situated individuals, and all class members, are current or former "employees" of Defendants within the meaning of the FLSA and the MFWSA.

3

13. Plaintiff, all similarly-situated individuals, and all class members, have been employed by Defendants within the applicable statutory periods pursuant to 29 U.S.C. § 255(a); Article II, § 34a of the Ohio Constitution; and R.C. § 2305.11.

14. Plaintiff, all similarly-situated individuals, and all class members, are individuals who are, or were, employed as store managers at numerous locations of Defendants' stores across the United States during the applicable statutory periods.

15. Defendant Genesco, Inc., is a retailer and wholesaler of stores engaged in selling headwear in retail stores in Ohio and across the United States, organized under Tennessee law, with its principal place of business at 1415 Murfreesboro Pike Street, Nashville, Tennessee 37217.

16. Defendant Hat World, Inc., d/b/a LIDS Sports Group, is a subsidiary of Genesco, Inc., and is a retailer and wholesaler of stores engaged in selling headwear in retail stores in Ohio and across the United States, organized under Minnesota law, with its principal place of business at 7555 Woodland Drive, Indianapolis, Indiana 46278.

17. Defendants John Doe(s) Nos. 1–5 and ABC Entity(ies) Nos. 1–5, names and addresses unknown, were other persons associated with Defendants Genesco, Inc., and Hat World, Inc., d/b/a LIDS Sports Group who have acted in concert with and/or on behalf of Defendants Genesco, Inc., and Hat World, Inc., d/b/a LIDS Sports Group to carry out acts against Plaintiff, all similarly-situated individuals, and all class members, as stated below. Plaintiff has been unable to identify the names and/or identities of Defendants John Doe(s) Nos. 1-5 and/or ABC Entities 1-5 through the exercise of reasonable diligence.

18. Defendants are "employers" of Plaintiff, all similarly-situated individuals, and all class members, within the meaning of the FLSA and the MFWSA.

19. Defendants were, and continue to be, enterprises engaged in "the production of goods for commerce" within the meaning of the FLSA and the MFWSA.

20. Defendants' annual gross revenues each exceeded $500,000 per year.

## FACTUAL ALLEGATIONS

21. Defendants employ store managers within their stores to sell their products and perform other work directly related to the selling of Defendants' goods.

22. Defendants apply the same employment, timekeeping, and payroll policies, practices, and procedures to all Store managers in the United States.

23. To the extent this Complaint alleges facts regarding Plaintiff's job duties, responsibilities, rate of pay and requirement of overtime hours being worked, all managers for Defendants, pursuant to Defendants' policies, practices and procedures, had the same work experience.

24. Likewise, to the extent this Complaint alleges certain nationwide policies, practices and/or procedures of Defendants, those policies, practices and/or procedures were applied to Plaintiff.

25. Defendants operate a line(s) of smaller-format retail stores in which headwear is the product primarily sold.

26. Defendants' stores operate under several names, including "Lids," "Lids Locker Room," and "Hat World."

27. Store managers almost exclusively work alone during their shifts, without the assistance of other managers and/or associates.

28. Defendants have maintained control, oversight, and direction over Plaintiff, all similarly-situated managers, and all class members, regarding timekeeping, payroll, and other employment practices that applied to them.

29. Store managers were frequently permitted and/or required to work in excess of 40 hours per workweek, but were not paid time-and-a-half for hours worked over 40 hours pursuant to Defendants' policies.

30. For example, between Thanksgiving and New Year's Day, Defendants specifically require Store managers to work in excess of 55 hours per workweek to complete their job responsibilities.

31. Plaintiff, all members of the proposed FLSA Overtime Subclass, and all members of the proposed Ohio Overtime Subclass consistently worked more than 40 hours per workweek.

32. Plaintiff, all members of the proposed FLSA Overtime Subclass, and all members of the proposed Ohio Overtime Subclass, were not paid one-and-a-half times their regular pay rate for all hours worked in excess of 40 hours per workweek.

### Misclassification of Store managers and Failure to Pay Overtime

33. It is, and has been, Defendants' nationwide and/or regional policy to uniformly classify their store managers as "exempt" employees and to not pay store managers one-and-a-half times their regular rate for hours worked over 40 hours per workweek.

34. Store managers spend the vast majority of their time (well in excess of 90% of their time) performing the same duties as Defendants' "non-exempt," hourly-paid employees, including sales associates.

35. Defendants, in violation of the FLSA and MFWSA, willfully, intentionally, recklessly, and/or improperly misclassified store managers as "exempt."

36. Plaintiff's, all members of the proposed FLSA Overtime Class', and all members of the proposed Ohio Overtime Class' primary duties were not directly or closely related to the performance of executive or administrative activities.

6

37. Plaintiff's, all members of the proposed FLSA Overtime Class', and all members of the proposed Ohio Overtime Class' primary duties as "exempt" store managers did not differ substantially from the duties of Defendants' "non-exempt" employees.

38. The primary duties of Defendants' "non-exempt" employees, such as assistant managers and sales associates, included stocking the store with merchandise, operating the cash register, cleaning the store, answering phone calls, and conducting inventory checks.

39. Plaintiff, all members of the proposed FLSA Overtime Class, and all members of the proposed Ohio Overtime Class primarily performed duties that other employees treated as "non-exempt" employees performed, including stocking the store with merchandise, operating the cash register, cleaning the store, answering phone calls, and conducting inventory checks.

40. Because store managers were classified as "exempt" employees and were not paid overtime, their earnings per hour were consistently less than Defendants' "non-exempt" employees, who were paid one-and-a-half times their regular pay rate for all hours worked in excess of 40 hours per workweek.

41. For example, during the span of four pay periods from August 23, 2014 to October 4, 2014, Plaintiff, a "non-exempt" assistant manager at the time, worked 404.24 hours and was paid a total of $4,623.60, or approximately $11.43 per hour. During the span of four pay periods from December 14, 2014 to February 7, 2015, Plaintiff, an "exempt" store manager at the time, worked 433.95 hours and was paid a total of $3,976.09, or approximately $9.16 per hour.

42. Store managers did not have the authority to order merchandise for sale at their stores.

43. Store managers did not have the authority to hire employees.

44. Store managers did not have the authority to terminate employees.

45. Store managers did not have the authority to promote employees.

7

46. Store managers did not have the authority to adjust rates of pay for themselves or other employees.

47. Store managers did not have the authority to adjust hours of work for themselves or other employees.

48. Store managers did not have the authority to handle employee complaints and grievances without approval from the managers' supervisors.

49. Store managers did not have the authority to discipline employees.

50. Store managers did not have the authority to plan work.

51. Store managers did not have the authority to determine what sales techniques were used.

52. Store managers did not have the authority to determine what merchandising techniques were used.

53. Store managers did not have the authority to determine what inventory techniques were used.

54. Store managers did not have the authority to determine what pricing techniques were used.

55. Store managers did not have the authority to determine how the merchandise would be laid out in the store.

56. Rather, the layout of merchandise was determined, primarily, in merchandise diagrams provided to the store.

57. Store managers did not have the authority as to how much merchandise was ordered for sale.

58. Store managers did not have the authority to determine what types of merchandise was ordered.

59. Store managers did not have the authority to determine when merchandise should be ordered.

60. Store managers did not have the authority to determine what fixtures the merchandise would be displayed upon.

61. Store managers did not have the authority to determine any budgetary issues with respect to the store.

62. Store managers did not have the authority to determine payroll budgeting for the store.

63. Store managers did not have the authority to determine the number of assistant managers' hours to be scheduled.

64. Store managers did not have the authority to determine the number of sales associates' hours to be scheduled.

65. Store managers had no authority for legal compliance measures.

66. Store managers did not monitor legal compliance measures.

67. Store managers primarily worked at cash registers, ringing customers out.

68. Over 90% of the store manager's time was spent between ringing customers out, conducting inventory, and stocking shelves.

69. Hourly employees were permitted to open and close the store.

70. Hourly employees were permitted to take all action, in connection with the register, that a store manager was permitted to take.

71. Store managers were not permitted to resolve customer complaints without approval from customer service.

72. The store managers' ability to resolve customer complaints was not greater than the ability of hourly employees.

73. Employees were trained with computer based learning tools.

74. Every skill necessary for an hourly employee to work in Defendants' operations was set forth in computer based learning.

75. Store managers did not actively train store employees.

76. Store managers did not train employees in any meaningful way.

77. Defendants' stores were able to function, without store managers, as is evidenced by the fact that stores would routinely be without an assigned store manager, for extended periods of time.

78. Store managers were frequently and/or exclusively unable to evaluate employees except through sales numbers, for various reasons, including that store managers almost exclusively worked, alone.

79. Each store's schedule was generally prepared by the district manager with the total number of staffing hours per day predetermined and the specific type of employee (i.e. store manager, assistant manager, and/or sales associate) per shift predetermined.

80. In short, store managers functioned virtually exactly the same as hourly employees, whose primary duties were not management.

81. Defendants applied, and continue to apply, the same uniform policies, practices, and procedures to all store managers.

82. Plaintiff, all members of the proposed FLSA Overtime Class, and all members of the proposed Ohio Overtime Class did not have any independent authority to deviate from these policies, practices, and procedures.

83. Defendants are aware, or should have been aware, that the FLSA and the MFWSA required them to pay "non-exempt" employees, including Plaintiff, all members of the proposed

FLSA Overtime Class, and all members of the proposed Ohio Overtime Class, an overtime premium for all hours worked in excess of 40 hours per workweek.

84. Defendants are aware, or should have been aware, that their store managers worked more than 40 hours per workweek, because their pay stubs specifically recorded the number of hours they worked over 40 hours for each workweek.

85. Defendants willfully failed to pay their store managers overtime compensation for hours worked over 40 hours in a workweek.

86. Plaintiff, all members of the proposed FLSA Overtime Class, and all members of the proposed Ohio Overtime Class were deprived of overtime pay they were guaranteed by law.

**Failure to Pay Minimum Wage and Wages for All Hours Worked**

87. Plaintiff was promoted by Defendants to store manager on December 11, 2014.

88. From December 14, 2014 to December 27, 2014, Plaintiff worked 55.79 hours of overtime and was paid at a rate of one-and-one-half times her regular rate for hours over 40, totaling at least $965.60 of unpaid overtime compensation.

89. During the next three pay periods ending on January 10, 2015, January 24, 2015, and February 7, 2015, Defendants deducted, without Plaintiff's consent, at least $321.86 from each of Plaintiff's paychecks, for a total of $965.58 in wage deductions, to rescind overtime compensation already paid to Plaintiff from December 14, 2014 to December 27, 2014.

90. These deductions dropped Plaintiff's wages below minimum wage for that period.

91. These deductions resulted in Defendants' failure to pay Plaintiff for all hours worked.

92. Defendants made improper wage deductions of this nature to store managers, including Plaintiff, all members of the proposed FLSA Minimum Wage Subclass, and all members of the proposed Ohio Minimum Wage Subclass.

93. As a result, Defendants failed to pay Plaintiff, all members of the proposed FLSA Minimum Wage Subclass, and all members of the proposed Ohio Minimum Wage Subclass at least the minimum wage and for all hours worked.

94. Defendants' actual practice of making improper deductions also results in Plaintiff, all members of the proposed FLSA Minimum Wage Subclass, and all members of the proposed Ohio Minimum Wage Subclass, losing their alleged "exempt" status during the time period in which the improper deductions were made. 29 C.F.R. § 541.603.

95. As a result of losing the alleged exemption, Plaintiff, all members of the proposed FLSA Minimum Wage Subclass, and all members of the proposed Ohio Minimum Wage Subclass, are entitled to time-and-a-half pay for all hours worked in excess of 40 hours per workweek.

## Collective Action Allegations

96. Plaintiff brings this case as an FLSA collective action, on behalf of herself and all other similarly-situated individuals, and seeks to represent the following subclasses pursuant to 29 U.S.C. § 216(b) (the "FLSA Subclasses"):

> A. All store managers who worked for Defendants from February 22, 2014 to present, in a store which primarily sold headwear throughout the United States, and who were misclassified as exempt and not paid overtime (the "FLSA Overtime Subclass"); and
>
> B. All store managers who worked for Defendants from February 22, 2014 who were paid less than minimum wage and not paid overtime as a result of deductions which took them below minimum wage during any work week (the "FLSA Minimum Wage Subclass").

97. Such persons are "similarly-situated" with respect to Defendants' FLSA violations in that all were store managers employed by Defendants, all were misclassified by Defendants' as "exempt," all were subjected to and injured by the same or similar unlawful, uniform practices of failing to pay minimum wage and overtime compensation to store managers, and all have claims

12

against Defendants for unpaid minimum wages and/or overtime compensation, as well as for liquidated damages, attorneys' fees, and costs.

98. Application of Defendants' illegal pay practices does not depend on the personal circumstances of Plaintiff or those joining this lawsuit.

99. Plaintiff and all similarly-situated individuals are victims of Defendants' widespread, repeated, systematic, and consistent illegal policies and practices that have resulted in the non-payment of minimum wage, overtime, and other wages for all hours worked.

100. Defendants knowingly, willfully, and/or with reckless disregard carried out their illegal pattern or practice of failing to pay minimum wages, overtime compensation, and wages for all hours worked with respect to Plaintiff and all similarly-situated individuals.

## Class Action Allegations

101. The Ohio Rule 23 Subclasses are so numerous that joinder of all members is impractical and inefficient, such that the requirement of Rule 23(a) are met. The precise number of class members is unknown, and the facts on which that number can be ascertained are presently within the sole control of Defendants. Defendants currently have in excess of 20 stores in the State of Ohio each of which has at least one manager and during the period of the Statute of Limitations have likely had numerous store managers, due to the high rate of turnover of Defendants' managers due to poor working conditions.

102. There are questions of law and fact common to the members of the Ohio Rule 23 Subclasses that predominate over any questions solely affecting the individual members, including:

    a. Whether Store managers were misclassified as "exempt" employees;

    b. Whether Defendants employed Plaintiff and the Ohio Rule 23 Subclasses members within the meaning of Article II, § 34a of the Ohio Constitution and the MFWSA;

    c. Whether Defendants failed to pay Plaintiff and the Ohio Rule 23 Subclasses members for all hours worked;

    d. Whether Defendants failed to pay Plaintiff and the Ohio Rule 23 Subclasses members the legally required minimum wage under Article II, § 34a of the Ohio Constitution and the MFWSA;

    e. Whether Defendants failed and/or refused to pay Plaintiff and the Ohio Rule 23 Subclasses members the required amount of overtime compensation for hours worked in excess of forty hours per workweek, in violation of R.C. § 4111;

    f. Whether Defendants are liable for all damages claimed by Plaintiff and the Ohio Rule 23 Subclasses, including compensatory, punitive and statutory damages, interest, costs and disbursements, and attorneys' fees; and

    g. Whether Defendants should be enjoined from continuing to violate Article II, § 34a of the Ohio Constitution and the MFWSA.

## CLAIMS FOR RELIEF

### Count One – FLSA: Failure to Pay Overtime Wages

103. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

104. Plaintiff brings this claim for violation of the FLSA's overtime provisions.

105. The FLSA requires that "non-exempt" employees receive overtime compensation of not less than one-and-a-half times the regular rate of pay. 29 U.S.C. § 207(a)(1).

106. Plaintiff and the FLSA Subclasses should have been classified by Defendants as "non-exempt" employees.

107. Plaintiff and the FLSA Overtime Subclasses should have been paid overtime wages in the amount of one-and-a-half times their regular rate of pay for all hours worked in excess of 40 hours per workweek.

108. Defendants did not pay overtime compensation to Plaintiff and the FLSA Subclasses at the rate of one-and-a-half times their regular rate for all overtime hours worked.

109. By engaging in these practices, Defendants willfully violated the FLSA.

110. As a result of Defendants' willful violations of the FLSA, Plaintiff and the FLSA Overtime Subclass have suffered and will continue to suffer a loss of income and other damages, which entitles Plaintiff and the FLSA Overtime Subclass to certain relief, including payment of all unpaid overtime compensation, liquidated damages, attorneys' fees, and costs.

### Count Two – FLSA: Failure to Pay Minimum Wage

111. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

112. The FLSA requires that "non-exempt" employees receive a minimum hourly wage for all work their employers suffer, permit, or require them to perform.

113. Based on Defendants' improper paycheck deductions alleged herein, Defendants failed to comply with the requirements of the FLSA, including 29 U.S.C. § 206, by paying Plaintiff and the FLSA Minimum Wage Subclass less than the applicable minimum wage rate and overtime.

114. Defendants have engaged in a series of unlawful acts, practices, policies, and procedures in violation of the FLSA, including refusing and/or failing to calculate and pay Plaintiff's and the FLSA Minimum Wage Subclass' minimum wage and overtime as required by law.

115. By engaging in these practices, Defendants have willfully violated the FLSA.

116. As a result of Defendants' willful violations of the FLSA, Plaintiff and the FLSA Minimum Wage Subclass have suffered and will continue to suffer a loss of income and other damages, which entitles Plaintiff and the FLSA Minimum Wage Subclass to certain relief, including payment of all unpaid minimum wages, liquidated damages, attorneys' fees, and costs.

## Count Three – MFWSA: Failure to Pay Overtime Wages

117. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

118. Plaintiff and the Ohio Rule 23 Subclasses consistently worked more than 40 hours per workweek.

119. The MFWSA, including R.C. § 4111.03, requires an employer to pay its employees at a rate of one-and-a-half times the employees' regular pay rate for all hours worked in excess of 40 hours per workweek.

120. Defendants' did not pay Plaintiff and/or the Ohio Overtime Subclass at least one-and-a-half times their regular pay rate for all hours worked in excess of 40 hours per workweek.

121. By not paying Plaintiffs and/or the Ohio Overtime Subclass the proper rate for time worked in excess of 40 hours per workweek, Defendants have violated the MFWSA.

122. As a result of Defendants' violations of the MFWSA, Plaintiff and the Ohio Overtime Subclass are entitled to certain relief, including unpaid overtime compensation, attorneys' fees, and costs.

## Count Four – Article II, § 34a of the Ohio Constitution: Failure to Pay Minimum Wage and Overtime and For All Hours Worked

123. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

124. The Ohio Constitution requires that employees receive a minimum hourly wage for all work their employers suffer, permit, or require them to perform. Art. II, § 34a of the Ohio Constitution.

125. Based on Defendants' improper paycheck deductions alleged herein, Defendants failed to pay the required minimum hourly wage to Plaintiff and the Ohio Minimum Wage Subclass and overtime.

126. Defendants have engaged in a series of unlawful acts, practices, policies, and procedures in violation of the Ohio Constitution, including refusing and/or failing to calculate and pay Plaintiff and the Ohio Minimum Wage Subclass the minimum wage and overtime as required by Ohio law.

127. The above-described willful and systematic violations have similarly affected Plaintiff and the Ohio Minimum Wage Subclass so that the claims of such members are common to and typical of each other.

128. As a result of Defendants' violations of the Ohio Constitution, Plaintiff and the Ohio Minimum Wage Subclass are entitled to certain relief, including back wages, damages in the amount of two times the back wages, attorneys' fees, and costs.

### Count Five – Ohio's Prompt Payment Act, R.C. § 4113.15: Failure to Tender Pay by Regular Payday

129. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

130. During all relevant times, Defendants have failed and continue to fail to make wage payments to Plaintiff and the Ohio Rule 23 Subclasses, as outlined above, within thirty days of when such payments were due, as required by R.C. § 4113.15.

131. By failing to make these wage payments within thirty days of when such payments were due, Defendants have violated R.C. § 4113.15.

132. As a result of Defendants' violations of R.C. § 4113.15, Plaintiff and the Ohio Rule 23 Subclasses are entitled to certain relief, including back wages and liquidated damages for each violation for each class member for each pay period.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, all similarly-situated individuals, and all class members are entitled to and pray for the following relief:

17

a. Certification of this action as a class action pursuant to Rule 23(B)(2) and (3) on behalf of the members of the Ohio Rule 23 Subclasses and appointment of Plaintiff and her counsel to represent the Ohio Rule 23 Subclasses;

b. Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitted them to assert timely wage and hour claims in this action, and appointment of Plaintiff and her counsel to represent the collective action members;

c. A declaratory judgment that the practices complained of herein are unlawful under the FLSA, Article II, § 34a of the Ohio Constitution, and the MFWSA;

d. An injunction against the Defendants and their officers, agents, successors, employees, representatives, and any and all persons in concert with them, as provided by law, from engaging in each of the unlawful practices, policies, and procedures set forth herein;

e. An award of unpaid wages due under the FLSA, Article II, § 34a of the Ohio Constitution, the MFWSA, and R.C. § 4113.15;

f. An award of liquidated damages as a result of Defendants' failure to pay minimum wages and overtime compensation pursuant to 29 U.S.C. § 216;

g. An award of treble damages, based on Defendants' failure to pay minimum wages, pursuant to Article II, § 34a of the Ohio Constitution;

h. Liquidated damages under R.C. § 4113.15;

i. An award of prejudgment and post-judgment interest;

j. An award of costs and expenses of this action together with reasonable attorneys' fees and expert fees;

k. Such other and further relief as this Court deems just and proper.

Respectfully submitted,

/s/ Patrick Kasson
Patrick Kasson (0055570) (Trial Counsel)
Tyler Tarney (0089082)
**REMINGER CO., L.P.A.**
200 Civic Center Drive, Suite 800
Columbus, Ohio 43215
Phone: (614) 232-2418
Fax:   (614) 232-2410
pkasson@reminger.com
ttarney@reminger.com
*Attorneys for Plaintiffs*

## JURY TRIAL DEMAND

Plaintiff requests a trial by jury on all claims.

/s/ Patrick Kasson
Patrick Kasson (0055570) (Trial Counsel)
Tyler Tarney (0089082)

## CONSENT TO JOIN ACTION AS REPRESENTATIVE PLAINTIFF

1. I hereby consent to be a Representative Plaintiff in a class and collective action against Defendants Genesco, Inc., Hat World, Inc., dba LIDS Sports Group, and/or any related entities and individuals to recover unpaid compensation, additional damages, attorneys' fees, and costs under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and Ohio Law.

2. I hereby designate **Reminger CO., L.P.A.**, and **Larrimer & Larrimer, LLC**, to represent me in bringing such action, and to make decisions on my behalf concerning the litigation and settlement. I agree to be bound by any adjudication of this action by the Court, whether it is favorable or unfavorable.

3. I also hereby consent to join any other related action against Defendants and/or other potentially responsible parties to assert my claim and for this Consent Form to be filed in any such action.

_____
Signature

2-6-17
Date

Julia E. Shumate
Name (Printed)

Store Manager
Job Title

**EXHIBIT A**